FILED
2019 Mar-01 PM 12:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| SEBRINA YATES, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| v. ) | Case No. 4:17-cv-1192-JEO |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Sebrina Yates appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB"). (Doc. 1).[1] Yates timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). For the following reasons, the court[2] finds this decision is due to be reversed and remanded for further consideration.

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

[2] The action was originally assigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and the court's general order of reference dated January 2, 2015. The parties have consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. 9).

1

## I. PROCEDURAL HISTORY

Yates was forty-eight years old at the time of the ALJ's decision. (R. 46, 424).[3] She has a high school education and past work experience as a machine operator and metal fabricator. (R. 440-41). Yates applied for a period of disability and DIB on July 25, 2013. (R. 424-25). She alleged disability beginning on March 15, 2013, due to bipolar I disorder, diabetes, back injury, anxiety, heart disease, overactive bladder, hypertension, and manic depression. (R. 439). Her applications were initially denied on October 4, 2013, and she requested a hearing before an administrative law judge ("ALJ"). (R. 256-82, 283-315). After the hearing, the ALJ found Plaintiff not disabled and issued an unfavorable decision on September 22, 2015. (R. 20-52). The Appeals Council denied Yates' review request on May 12, 2017. (R. 1-7). This case is now properly before the court.

## II. STATUORY AND REGULATORY FRAMEWORK

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is performing substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the evaluation stops. *Id.* If

---

[3] References herein to "R.___" are to the administrative record found at Docs. 6-1 through 6-23.

the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to the second step to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet certain durational requirements before a claimant will be found disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the

Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found Yates had not engaged in substantial gainful activity since March 15, 2013, the alleged onset date. (R. 26). At step two, the ALJ found Yates suffered from the following severe impairments: anxiety, depression, bipolar disorder, chronic pain syndrome, obesity, history of lumbar disc disease, and cholelithiasis. (R. 26).

At step three, the ALJ found Yates did not have an impairment or combination of impairments meeting or medically equaling any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 38). Before proceeding to step four, the ALJ determined Yates had the residual function capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) which allows occasional stooping and crouching but: (1) no pushing or pulling of the lower extremity; (2) the claimant should work in a temperature controlled environment; (3) the claimant should work with or around things as opposed to the general public; and (4) the claimant should not perform work requiring her to meet production goals. (R. 40). In reaching this opinion, the ALJ considered Yates' symptoms, the opinion evidence, and the medical record. (R. 40).

Because the ALJ determined Yates was unable to perform any past relevant work at step four, the ALJ relied on the testimony of a vocational expert in finding a significant number of jobs in the national economy Yates can perform. (R. 46-47). Thus, Yates was found not to be disabled at step five of the five-step sequential evaluation process. (R. 48).

## III. STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013)[4] (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Charter*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision

---

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Brown v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV. DISCUSSION

Yates asserts the ALJ's decision is not supported by substantial evidence and should be reversed and remanded. More specifically, Yates makes the following arguments: (1) the ALJ did not properly evaluate the medical opinion evidence; (2) the ALJ has a documented history of bias; (3) the ALJ did not accurately state Yates' limitations when providing the vocational expert with hypotheticals; and (4) the Appeals Council improperly denied her request for review based on additional

evidence. (Doc. 7 at 27-56). The court deems remand necessary regarding the first issue and, as such, does not address the remaining issues raised by Yates.

Social Security regulations provide that, in considering what weight to give any medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C .F.R. § 404.1527(d); *see also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments."). When evaluating a disability claim, it is well settled that an ALJ is required to state with particularity the weight he gave the different medical opinions and the reasons therefor. *Sarfaz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). The opinion of a one-time examiner, i.e., non-treating doctors, is not entitled to deference or special consideration. *See Crawford*, 363 F.3d at 1160 (stating that the opinion of a doctor who examines a claimant on only one occasion is not entitled to great weight).

Here, both consulting mental health doctors, Dr. Christopher Randolph, a psychiatrist, and Dr. June Nichols, a clinical psychologist, opined that Yates had

7

limitations that would significantly interfere with her ability to work. Specifically, Dr. Randolph reported that Plaintiff stated she quit her job because "her boss made her nervous." (R. 760). Further, she reported that she "[i]solates to home," "feels overwhelmed by feelings," feels "that everyone is out to get her," experiences poor sleep and "impaired concentration and energy." (R. 759, 760). Yates "alluded to hallucinations and described these as 'seeing shadows.'" (R. 759). Dr. Randolph diagnosed Yates with recurrent major depression and stated that although he did "not see any impairment in reality testing that would warrant a psychiatric disability, . . . due to her avoidance and stated paranoia, she would not be employable." (R. 760).

Dr. June Nichols diagnosed Yates with mixed bipolar disorder with psychotic features and panic disorder without agoraphobia. (R. 782). Dr. Nichols noted she was anxious, with reduced energy and anhedonia[5] and "confirmed crying episodes." (R. 780, 782). She noted Yates' "quick mood swings, hyperirritability, and aggression," in addition to the tendency to be distracted. (R. 783). Additionally, Dr. Nichols took into account Yates' statements that she "see[s] shadows but [doesn't] hear voices" and that she experiences panic attacks when she goes to a new place. (R. 782). To combat this, Yates stated that she "tr[ies] to shop at the same store." (R. 782). Dr. Nichols opined that Yates "suffers

---

[5] Merriam-Webster dictionary defines anhedonia as "a psychological condition characterized by inability to experience pleasure in normally pleasurable acts."

8

symptoms of anxiety that result in panic attacks, but the greatest difficulties appear related to the cycling caused by the bipolar disorder." (R. 783). Dr. Nichols concluded that Yates' "ability to relate interpersonally and withstand the pressures of everyday work is compromised due to the nature of her current symptom" and that the "anxiety and panic attacks would markedly interfere with concentration, persistence, and pace." (R. 783).

The ALJ gave "minimal weight" to the opinions of Dr. Randolph and Dr. Nichols. (R. 45). His stated reasons for assigning minimal weight to these two opinions were because Yates "has not exhibited marked or extreme restrictions in activities of daily living," as evidenced by her ability to "care for her grandchildren and pets independently." (R. 45). The ALJ also noted that Yates' use of Facebook, talking on the phone, and interacting with family members were inconsistent with the medical opinions.[6] (R. 46).

The reasons stated by the ALJ in assigning minimum weight to the opinions of Dr. Randolph and Dr. Nichols are not supported by substantial evidence. The ALJ's reliance on Yates' ability to interact with family members, the use of Facebook, and ability to take care of her dogs to support his conclusion is a stretch, at best. The record indicates that Yates experiences difficulty in interacting with

---

[6] Additionally, the ALJ refers to Yates' history of sporadic drug use and cites a treating doctor's opinion that the drug use "contributed to her mental status." (R. 43). That being said, later in the opinion, the ALJ states that "drug and/or alcohol abuse is not material to this decision." (R. 44). As such, the court does not consider Yates' history of occasional drug use as a reason for discrediting the consultative doctor opinions.

9

both her husband and daughter because they ridicule her; in addition, she sometimes feels an urge to hurt her husband and others but does not. (R. 624, 628, 858, 867). While she stated that she enjoys seeing her grandchildren, such interaction is vastly different than daily interaction with co-workers and supervisors. Further, Yates explained that she watches television and looks at Facebook, but the mere ability to watch television and scroll through social media does not necessarily equate with the requisite mental ability to withstand an eight-hour workday, especially considering Yates' numerous mental diagnoses. As for attending to her dogs, Yates explained that she lets them outside to use the bathroom and feeds them. (R. 271-72). The ability to care for her pets' basic needs does not equate with an ability to work an eight hour workday. *See Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (substantial evidence did not support the ALJ's finding that the claimant's ability to do simple household chores negated her claims that she had to lie down every two hours because of her impairments); *see also Smith v. Califano*, 637 F.2d 968, 971-72 (3d Cir. 1981) ("[S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. . . . Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity. . . . It is well settled that sporadic or transitory activity does not disprove disability.") (citations and quotations omitted.).

Additionally, the consulting physician opinions are generally consistent with the treatment records. The medical records from mid-2013 through 2015 note episodes of hallucinations, thoughts of hurting others, severe anxiety and depression, and poor attention and concentration, among other things. (R. 556, 557-60, 614-17, 622-23, 843, 845-47, 858). By the end of 2014 and middle of 2015, the treatment notes indicate increased anger and anxiety, depression at least three out of every five days, and continued hallucinations, including a report of seeing a leprechaun in her laundry room. (R. 840-843, 845, 847, 850-53, 858). For these reasons, the court finds that substantial evidence does not support the reasoning stated by the ALJ for assigning minimal weight to the opinions of Dr. Randolph and Dr. Nichols.

## V. CONCLUSION

Pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is due to be **REVERSED** and **REMANDED** to the Commissioner to conduct further proceedings consistent with this opinion.[7]

---

[7] The court notes the lack of citation to the record throughout the ALJ opinion. This deficiency severely hampers the court's ability to adequately review and understand the exact reasoning of the ALJ and whether the record supports his conclusions.

**DATED** this 1st day of March, 2019.

                                                  _____
                                                  **JOHN E. OTT**
                                                  Chief United States Magistrate Judge